## Pennsylvania Canal Co. *versus* Dunkel.

103  373
135  299

1. In order to fix the location of land appropriated by the state to public uses, a draft attached to the report of the inquisition appointed to assess the damages, together with all the explanatory memoranda attached thereto, is admissible in evidence.

2. Where, in such case, a part of said memoranda, in the same hand-writing as the residue thereof, is below the signature of the surveyor, and sets forth the contents of a lot of ground lying between the tract taken and a certain turnpike road, said part is admissible in evidence with the rest of the memoranda.

3. The proper method in such case is to measure the contents of said lot from the edge, and not from the middle of the turnpike road.

4. Where the state has taken and held possession of land for more than thirty-one years, and always acquiesced in certain lines and bound-aries, those who purchase from the state will not be permitted to shift the location upon doubtful or uncertain evidence; and if the evidence leaves the case in doubt, true policy will sustain the lines and boundaries acqui-esced in. If the true lines and boundaries be clearly shown, the pur-chasers from the state may, however, recover and hold the same, notwithstanding such acquiescence.

May 30th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Dauphin county:* of May Term 1882, No: 56.

Ejectment, by The Pennsylvania Canal Co. against Josiah A. Dunkel, for a small strip of land in the city of Harrisburg, twenty-eight feet three inches in length, and about eleven feet in breadth, on which was erected part of the defendant's store and cabinet-maker's shop.

On the trial, before PEARSON, P. J., the plaintiff claimed the strip in question as part of a tract of three acres surveyed and condemned in the year 1826 for the Pennsylvania Canal, out of the farm of one Richard Trewick, in pursuance of the pro-visions of the Act of February 25th 1826, Pamph. L. 55. Plaintiff showed that said tract of three acres had been conveyed by the Commonwealth to the Pennsylvania Railroad Company, and subsequently by said company to itself.

In order to prove the condemnation of the tract for canal purposes, plaintiff put in evidence the original petition for damages, and the report of the inquest describing and ascer-taining the land taken, and assessing damages therefor.

In said report the land valued was described as seventy-five perches long and six and four-tenths perches wide, with a post at each corner. The courses and distances were also given, and the adjoiners.

The report contained a reference to a diagram annexed, which was as follows:

·Annexed was the following memorandum:

Draught of the part of Richard Trewick's land which the Pennsylvania Canal occupies, containing three acres, strict measure, viz.: A, B, D, C, situate in Swatara township, county of Dauphin, surveyed the 5th day of Oct., 1826, at the instance of Thomas Elder, Esq., Att'y for R. Trewick, pr. me.

JAMES MAGINNESS.

Note.—B, F, E, D represents a strip of land which lies between the turnpike and canal, containing two acres and thirty-six perches, strict measure.

Note.—A, B, D, C represents part of the Pennsya. Canal.

Plaintiff did not offer in evidence that portion of the above memorandum annexed to the draft below the signature of Maginness. The above memorandum all appeared to be in the same handwriting, and had been taken from among the original records in the prothonotary's office.

Plaintiff then further proved that one Runk had made a survey of the three acres in question, on behalf of the Pennsylvania Railroad Company, in 1857, which survey included the strip of land in dispute on the side nearest the turnpike.

Defendant contended that the three-acre survey did not cover the strip in dispute. He showed title to himself from Richard Trewick in all the land of said Trewick lying between the three-acre tract and the turnpike, and then further offered in evidence the postscript or addendum to the draft. Objected to, on the ground that the part of the draft below the signature of the surveyor was not a part of the record, and not a memorandum which the inquest had authority to make. Objection overruled. Evidence admitted. Exception.

Defendant then showed that for thirty-one years after the taking of the land the state had acquiesced in certain lines as bounding the same, which excluded the strip in controversy; and further, that if the space of two acres and thirty-six perches was allowed to intervene between the canal and the edge of the turnpike, the canal property would not cover the lot of ground in dispute. If, however, the space was measured from the centre of the turnpike, the canal property would cover the tract in dispute.

Plaintiff requested the court to charge, inter alia, as follows:

2. The statutory power conferred on the viewers to assess damages due to Richard Trewick, by taking his lands for canal purposes, having been fully executed without the note added below the signature of the surveyor, and the inquest having no authority to find the contents of adjoining lands, such finding as stated by said note is void and of no effect.

Answer: The inquest had full power to note precisely what land they took to make up the three acres, and it was proper for them to carefully note the precise spot where they laid it out, make a draft of the ground, and return it with their inquest. It might become important for them to designate its location by referring to the adjoining lands, and as in such cases those matters are generally noted by the surveyor, who acts under their

direction, and whose work is adopted by them, and reported to the court and confirmed, we consider the survey part of this report, as valid as any other part, and, after remaining of record without objection for fifty-four years, it cannot now be treated as of no avail in locating the land taken.

3. The note to the canal survey as made by James Maginness, calling for the turnpike road as a boundary of the strip of land between the canal survey and said road, in law carries the eastern boundary of that strip to the middle of the turnpike ; and, as the witnesses on both sides testify that the boundaries so extended include two acres and thirty-six perches or more, the defence based on said note to the survey has wholly failed.

Answer : Where an individual sells land bounded by a street or a road, the law generally carries the title to the middle of the road, if the vendor owns so far. Where the state or a company takes land by a survey, it would carry the title no farther than the survey by which it is taken. When, as in this case, the grant or claim is not extended to the turnpike, but that is referred to for the boundary of the owner, and is at most spoken of as a landmark to which to extend a survey, there is no reason to suppose that it extends to the middle of the road ; but, on the contrary, we are of opinion that in this case it extends no farther than the margin of the turnpike.

The court charged, inter alia, as follows :

" There is a matter in the present case of some little public policy ; but yet those things ought not to control us, unless there is no proper data or landmark by which we can be controlled. As a general rule, wherever a man's line is located—wherever his line is run—there he is to take, and there is where the law says it is to run. If he could take other lines, he might get over in order to get even, or to get an additional quantity. He must take the lines that were run for him. The only matter of policy that can be spoken of about it is this : whether, after a state has taken possession of property for more than thirty-one years, and has always acquiesced in certain lines—in certain claims and certain boundaries—whether those who receive title from them ought to be permitted to disturb the acquiescence. They are permitted by law to do it, if they can show that there has been clearly an error and trespass upon them all the time ; but if they cannot show that—if there is uncertainty as to how it was located, or they are not certain as to how it was located, and the state acquiesced in it for nearly thirty-one years, it strikes me true policy should say that the peace and quiet of society would be to sustain what has long been acquiesced in ; but that is a question for the jury. If these surveyors have shown that they have a line elsewhere, then they are entitled to it ; but if it is left in doubt and uncertainty, then you will be

[Pennsylvania Canal Co. *v.* Dunkel.]

justified in saying that those lines have been permanently held long enough for the party to build on, and that he ought to be permitted to hold it in peace. That is a question, however, that ought to be examined with care, for you have no right to take and deprive a party of their rights. If held by the state, or held by others, under twenty-one years, it would be consideration for error; but so long held, it probably ought to be considered as settled; but that is a question for the jury.

＊　　＊　　＊　　＊　　＊.　　＊　　＊

"There is another point which was raised, that I think is not in writing; and I may as well speak of it now as any other time. It is this: There being a call for the turnpike road as one of the boundaries of the survey, the plaintiff says that they must go to the centre of the road, and cannot take the line of the road as the boundary to measure from. Now we meet that as a matter of law, and say we think they are entirely in error in regard to their legal position. If a man sells land bounded by a road or a street, the title does not pass to the centre of that road, or centre of the street. There is no sale of that land. There is a taking of land by the commonwealth for their own use, without any sale on the part of the owner. That does not grant land, and has no bearing. Thus with this ground also; it is not used as a landmark in that way; it is used in a way to designate another person's land by—to designate the land that the commonwealth has or is about taking. They wanted some landmark, and it is designated and fixed by the turnpike road. That is the only point that they had to designate it by, and that is what it is done for—to hold both. And how will they do it? They do not run towards the road; it is only used as a landmark. It is not a sale of the road—it is not claiming a sale of the road; but it is a mark to be used to enable the owner to see how much land he has. I do not conceive it has any bearing on the case; nor do those cases read yesterday evening show that that land conveyed to the edge of the road goes to the middle. It is not supposed that a man sells or conveys any part of that road to those he sells to; those who buy get the land, but get nothing of the half of the road. It is used as a landmark to measure from, to show where a line is to be, and where the line of the company is to be. That is the only purpose; and therefore it has no bearing upon it, according to my conception of the case, when they call for the turnpike road. It is something not subject to the owner of the land, because it has nothing but the right of way over it, and the possibility of its being vacated sometime, either by the corporation or the public, which has paid him damages for the use of the land that has been taken. Therefore it is that it cannot have any bearing at all, as presumed on the other side, or as shown

[Pennsylvania Canal Co *v.* Dunkel.]

to be the case where men sell lands bounded on the road—it can have no such bearing as that.   On the contrary, if he went to one of the hills and started, it would be just the same thing; it was a starting-point to make a survey, and nothing else."

Verdict and judgment for the defendant.   Plaintiff thereupon took this writ of error, assigning for error the admission of defendant's offer of evidence, the answers to plaintiff's points above given, and the two clauses of the charge cited.   The first of said clauses constituted the fifth assignment of error.

*Jordan* and *Hall*, for the plaintiff in error.—The duty of the viewers was only to ascertain the quantity of land taken, and to assess the damages : Heise *v.* R. R. Co., 12 P. F. S. 68. They had no authority to go further, and report the contents of adjoining lands.   Such part of the report is not admissible evidence : Sturla *v.* Freccia, 40 L. T. R., N. S. 709 ; Warner *v.* Howell, 3 Wash. C. C. R. 12 ; Commissioners *v.* Nichols et ux., 14 Ohio St. 260.

The proper mode of measurement is to the centre of the turnpike : Dovaston *v.* Payne, 2 Sm. L. C. 213 ; Low *v.* Tibbetts, 72 Mo. 92 ; Newhall *v.* Ireson, 8 Cush. 598 ; Champlin *v.* Pendleton, 13 Conn. 23 ; Ball *v.* Ball, 1 Phila. 37 ; Paul *v.* Carver, 2 Casey 223 ; Cox *v.* Freedley, 9 Casey 124 ; Wood *v.* Appal, 12 P. F. S. 210 ; Borough of Easton's Appeal, 32 P. F. S. 85.

*Mumma* (with whom were *Shopp and Weiss*), for the defendant in error.—The whole memorandum to the draft, both that before and after the surveyor's signature, is in one handwriting, and is all admissible as part and parcel of the record : Stocking *v.* Fairchild, 5 Pick. 181 ; Stone *v.* Hansbrough, 5 Leigh (Virg.) 422 ; Shermer *v.* Beale, 1 Wash. (Virg.) 15 ; Gordon *v.* Frasier, 2 Wash. (Virg.) 168 ; Williams *v.* Handley, 3 Bibb (Ky.) 10.

In order to fix the location, it was proper to submit all the adjoining surveys to the jury, including the survey described in the latter part of the memorandum : Collins *v.* Barclay, 7 Barr 74.

The proper method of measuring this lot was from the edge, and not from the centre of the highway.   The rule of law invoked by the plaintiff in error applies only to owners abutting on the street, and not to a case like this, where the street is only referred to as a point or monument from which to measure to find the line of an owner not abutting on the street, or even coming near to it.

Mr. Justice TRUNKEY delivered the opinion of the court, October 2d 1882.

The act of February 25th 1826, P. L. 55, made it the duty of the canal commissioners, with the approval of an engineer and the consent of the governor, to determine the location and dimensions of the canal. It having been located through the farm of Richard Trewick, he and the commissioners disagreed, whereupon jurors were appointed to value the land taken and assess the damages, and it was their duty " to describe and ascertain the bounds of the land by them valued:" In the report, the land valued is described as seventy-five perches long and six and four-tenths perches wide, with a post at each corner, the courses and distances given, and the quantity, bounded on each end by the heirs of Landis, adding that " a diagram whereof is hereto annexed." That diagram is dated October 5th 1826, the date of the inquisition, is signed by James Maginness, and is the only known paper showing the location of the canal through Trewick's farm. The entire paper, including the explanatory notes, appears to be in the same handwriting, and it is not alleged that it has been changed in any way since the day of the inquisition. It is a " draught of the part of Richard Trewick's land which the Pennsylvania Canal occupies, containing three acres, strict measure, viz.: A, B, D, C," as appears upon its face. Between the land marked by said letters and the border of the Turnpike road is a strip of land marked B, F, E, D. Below the signature of Maginness is the following : "Note—B, F, E, D, represents a strip of land which lies between the turnpike and canal, containing two acres and thirty-six perches, strict measure."

" Note.—A, B, D, C, represents part of the Pennsylvania canal."

The plaintiff gave in evidence that part of the draft over Maginness' signature, and objected to the part below " because not part of the record, and not being a memorandum which the inquest had authority to make," and now complains that the court received the whole. As a draft of a survey the pertinent explanatory notes were as competent as any other part, whether above or below the signature ; and if properly identified, the whole would be as competent without a signature as with. The diagram annexed to the inquisition would have like weight if signed by nobody. Its competency does not depend upon the name of Maginness, nor upon the authority of the inquest to locate and determine the quantity of any lands. The learned judge of the common pleas considered it a valid part of the report, which, having remained of record without objection for fifty-four years, will avail in locating the land taken. There was no error in that. The inquest was bound to describe the land they valued. What is a description worth which will apply to one place as well as another ? The land was a narrow

piece across a larger tract; and by moving the posts set at its corners, it would be without marks upon the ground. These would likely be moved in the making of the canal. The turnpike was the nearest mark having the appearance of permanency, and the inquest properly referred to it, so that if the movable marks should be shifted the entire evidence of the location of the land valued would not be lost.

But if the inquest was without authority to refer to a permanent object to indicate the land which they had actually valued, the draft was competent in an inquiry to ascertain where the canal was located. The Commonwealth had made the location and was a party to the proceeding to determine the amount of damages suffered by the owner, which proceeding was more than half a century before the bringing of this suit. Attached to the record is a draft which tends to show the location. It was made after the beginning of the canal, and before its completion. It must have been known to the parties interested. It is consistent with the place where the canal was constructed. The witnesses who could point out the location, if living, cannot be found. Such a draft, under such circumstances, is pertinent. And if either party puts in evidence a portion of it, the other may demand that the whole be read.

Between the canal and the centre of the turnpike is more land than stated in the draft. If the line marked on the draft is to be taken as the centre of the turnpike, it favors the plaintiff's claim in this action. But it is too plain for doubt that in fact the line is on the border of the turnpike. The plaintiff invokes the application of a familiar principle respecting grants of lands bounded by highways in order to shift this line from the margin to the centre. There was no grant, unless the appropriation of land by the state be called a grant. That land did not touch the highway; the highway was used as an object at a certain distance, and cannot be considered in any other light than a landmark. When it was referred to as such, it would have been as fit to have taken its centre as its margin to measure from; but whichever was taken must be used in ascertaining the location of the land which the state appropriated. Being a landmark for the defining of the land taken for the canal, it is not controlled by the principle that a grant of land bounded upon a highway carries the fee to the centre of it if the grantor at the time owned to the centre.

That part of the charge constituting the fifth assignment of error was not misleading. If it be that one or two expressions are exceptionable, they were so modified by the context as to be harmless. The sum of what was said is, that when the state had taken and held possession of land for more than thirty-one years, and always acquiesced in certain lines and boundaries,

[National Mut. Aid Society *v.* Lupold.]

those who purchased from the state will not be permitted to shift
the location upon doubtful or uncertain evidence ; and if the
evidence leaves the case in doubt, true policy would sustain the
lines and boundaries so long acquiesced in ; but if the true lines
and boundaries be clearly shown, they can recover and hold to
the same, notwithstanding such acquiescence.

Judgment affirmed.